[No. 21107. *En Banc.* May 29, 1928.]

THE STATE OF WASHINGTON, *on the Relation of Foster-Wyman Lumber Company et al., Plaintiffs,* v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents.*[1]

[1] CONSTITUTIONAL LAW (31)—DELEGATION OF LEGISLATIVE POWER —RULES OF COURT—ACT EMPOWERING SUPREME COURT TO FORMULATE. There is no unlawful delegation of legislative power in Rem. 1927 Sup., § 13-1 *et seq.,* authorizing the supreme court to make rules relating to pleading, procedure and practice in the courts of this state, notwithstanding the legislature formerly functioned as the source of rules of procedure in courts; since such act is not exclusively legislative, and may be delegated.

[2] CONSTITUTIONAL LAW (9) — COURTS (29) — RULES OF COURT — POWER TO REGULATE PROCEDURE—CONSTRUCTION—ACQUIESCENCE. Constitution Art. 4, § 24, providing that the judges of the superior courts shall establish rules for the government of the superior courts, was intended only to secure uniformity in the minutiae of court government, and not as an exclusive grant of power that would prevent the legislature, by Rem. Comp. Stat., § 13-1 *et seq.,* from delegating power to the supreme court to make rules. of practice and procedure governing the courts; especially in view of the legislative interpretation of § 24 against such exclusive grant, acquiesced in since statehood, which is entitled to great weight.

[3] STATUTES (81)—TIME OF TAKING EFFECT—OCCURRENCE OF CONTINGENCY. Rem. 1927 Sup., § 13-2, providing that, upon the pro-

mulgation of rules by the supreme court, all laws in conflict therewith shall be of no further force, is not unconstitutional in providing that the taking effect of the act is postponed and dependent upon the happening of a subsequent event; since that is within the power of the legislature.

[4] COURTS (29)—DEPOSITIONS (2-1)—PROCEEDINGS—NATURE—RULES OF COURT—POWER TO MAKE RULES. The taking of a deposition, as provided in Rem. 1927 Sup., § 308-8, is a matter relating to practice and procedure within the rule-making power conferred upon the supreme court, and not a matter of substantive law.

Application filed in the supreme court January 30, 1928, for a writ of prohibition to the superior court for King county, Beals, J., to restrain an adjudication of contempt of court against witnesses refusing to make depositions in a pending action. Denied.

*Alexander & Bundy,* for relators.

*Bogle, Bogle & Gates, Bullitt & Kahin (Orlo B. Kellogg,* of counsel), for respondents.

*The Attorney General, H. C. Brodie, Assistant,* and *John H. Powell, W. V. Tanner, Chas. W. Greenough, Frank Funkhouser, Hadley & Abbott,* and *Miller & Freese, amici curiæ.*

ASKREN, J.— This is an application for a writ of prohibition to prevent the superior court of King county from holding certain witnesses in contempt of court for refusal to give their depositions in an action brought by assignees of the McCormack Lumber Company against the Foster-Wyman Lumber Company, a corporation. One of the witnesses, Foster, was a defendant in the action, and the other, Wyman, was a stockholder and officer of the defendant corporation.

The testimony was sought under authority of Rule VIII, subd. 5, adopted by this court January 14, 1927, which reads as follows:

"1. The testimony of a witness may be taken by deposition, to be read in evidence in an action, suit

or proceeding commenced and pending in any court in this state, in the following cases:  . . .

"(5) When the witness is (a) a party to the action or (b) an officer, agent, partner, stockholder or employee of a party or  . . ." 140 Wash. xl; Rem. 1927 Sup., § 308-8.

Both witnesses coming under the designation in subd. 5, the court announced its intention of holding the witnesses in contempt if they persisted in refusal to testify, but deferred the question of contempt to allow the relators to present to this court arguments on the constitutionality of the rule involved.

The rule in question was passed by this court pursuant to an act of the legislature of 1925, which expressly gave that power to the court. That act is as follows:

"An Act to promote the speedy determination of litigation on the merits and authorizing the Supreme Court to make rules relating to pleading, procedure and practice in the courts of this state.

.   . .   .   .   .   .   .   .   .   .   .

"Section 1. The supreme court shall have power to prescribe from time to time, the forms of writs and all other process, the mode and manner of framing and filing proceedings and pleadings; of giving notice and serving writs and process of all kinds; of taking and obtaining evidence; of drawing up, entering and enrolling orders and judgments; and generally to regulate and prescribe by rule the forms for and the kind and character of the entire pleading, practice and procedure to be used in all suits, actions, appeals and proceedings of whatever nature by the supreme court, superior courts and justices of the peace of the state of Washington. In prescribing such rules the supreme court shall have regard to the simplification of the system of pleading, practice and procedure in said courts to promote the speedy determination of litigation on the merits.

"Sec. 2. When and as the rules of courts herein authorized shall be promulgated all laws in conflict therewith shall be and become of no further force or effect.

"Sec. 3. This act shall not be construed to deprive the superior courts of power to establish rules for their government supplementary to and not in conflict with the rules prescribed by the supreme court." Laws of 1925, Ex. Ses., p. 187 (Rem. 1927 Sup., § 13-1 *et seq.*)

Since the application in this court for the writ, many briefs have been filed *amici curiæ* on both sides of the question, and they, with the briefs filed by the immediate parties to the controversy, have caused the arguments to take a wide range. We think, however, that the attack upon the constitutionality of the rule may safely be divided *into* three parts, each involving what appears to be one of the important points raised.

[1] The first question that deserves consideration is the claim that the act of 1925 is a delegation of legislative power, for, if this point be well taken, it is decisive of the controversy. In its essential matters, the argument upon this point is that, from the beginning of statehood, it has always been the recognized policy of the state that the legislature should prescribe procedure and practice in the courts, leaving only to them the right to make rules involving decorum and orderly government. While it is true that the legislature has functioned in such a capacity ever since statehood, that fact becomes not at all controlling in determining whether the making of such laws for procedure and practice is in itself an exclusive legislative function. Indeed, there is excellent authority, from an historical as well as legal standpoint, that the making of rules governing procedure and practice in courts is not at all a legislative, but purely a judicial, function. In 1792 the *Attorney General* of the United

States requested information from the United States supreme court concerning the rules and regulations of the court. The chief justice, speaking for that tribunal, said that the court considered

"The practice of the courts of King's Bench and Chancery in England, as affording outlines for the practice of this court; and that they will from time to time, make such alterations therein, as circumstances may render necessary." *Hayburn's Case,* 2 Dall. (U. S.) 411, 1 Law Ed. 437.

At the time of the pronouncement of the court, the procedure in England was controlled by rules enunciated by the courts. However interesting this question may be when viewed from the point of legislative usurpation of judicial powers, it will be unprofitable to further delve into the argument in this opinion, since there confronts us always the debatable question of whether long acquiescence by the courts of the state in legislative control of these matters is not sufficient to require a holding that the legislative body, if it so desires, can continue that supervision.

The point here in controversy can be decided upon a far more stable foundation. Assuming the right of the legislature to make rules for the court, and acknowledging its continued action in that respect, it does not follow that such action is a legislative function. Not all acts performed by a legislature are strictly legislative in character. A failure to recognize this distinction often gives rise to the belief that one of our law making bodies has abdicated its duty, and attempted to transfer its legislative mantle to the shoulders of another body, not legislative, thereby subverting the purpose of its creation and denying the people of the commonwealth the right to have the laws which govern them enacted by their duly chosen representatives. This distinction was ably pointed

out by the United States supreme court as early as *Wayman v. Southard,* 10 Wheat. 1, where the court had occasion to construe its powers to make rules governing execution under the 17th section of the Judiciary Act of 1789, which provided in part that

". . . all the said courts shall have power to make and establish all necessary rules for the orderly conduct of business in said courts, provided such rules are not repugnant to the laws of the United States."

Chief Justice Marshall, referring to the point, said:

"It will not be contended, that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself. Without going further for examples, we will take that, the legality of which the counsel for the defendants admit. The 17th section of the Judiciary act, and the 7th section of the additional act, empower the courts respectively to regulate their practice. It certainly will not be contended, that this might not be done by Congress. The courts, for example, may make rules, directing the returning of writs and processes, the finding of declarations and other pleadings, and other things of the same description. It will not be contended, that these things might not be done by the legislature, without the intervention of the courts; yet it is not alleged that the power may not be conferred on the judicial department.

"The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provisions to fill up the details." *Wayman v. Southard,* 10 Wheat. 1.

Again, in *United States Bank v. Halstead,* 10 Wheat. 51, a similar question arose. Said the court:

"It is said, however, that this is the exercise of legislative power, which could not be delegated by Congress to the courts of justice. But this objection cannot be sustained. There is no doubt that Congress might have legislated more specifically on the subject, and declared what property should be subject to executions from the courts of the United States. But it does not follow, that because Congress might have done this, they necessarily must do it, and cannot commit the power to the courts of justice. Congress might regulate the whole practice of the courts, if it was deemed expedient so to do: but this power is vested in the courts; and it never has occurred to any one that it was a delegation of legislative power."

It should also be borne in mind that the legislature is not required to legislate in complete detail upon every subject which may even be a proper matter for legislative action. Multiplied cases might be cited in which a legislative act has been upheld which did nothing more than express a broad policy in connection with the subject, leaving to other bodies, administrative in character, the power to enact rules and regulations governing conduct under the act. A few enunciating the principle are: *State ex rel. Oregon R. & Nav. Co. v. Railroad Comm.*, 52 Wash. 17, 100 Pac. 179; *State ex rel. Great Northern R. Co. v. Railroad Comm.*, 52 Wash. 33, 100 Pac. 184; *Carstens v. De-Sellem*, 82 Wash. 643, 144 Pac. 934; *State ex rel. Chicago, Milwaukee & St. Paul R. Co. v. Public Serv. Comm.*, 94 Wash. 274, 162 Pac. 523; *Vail v. Seaborg*, 120 Wash. 126, 207 Pac. 15.

There are very cogent reasons why the legislature is not compelled to legislate in intricate detail upon all subjects, the chief of which may very properly be said to be the inability of a legislative body to perform such minute functions, owing to short biennial sessions with lack of time to study and investigate

problems. With court procedure and practice this is especially true, for the proper analyzation of the subject and formation of proper rules requires much experience and study, and should be performed by those who are thoroughly familiar with the needs. The legislature recognized that rules of court to promote justice, should be in the hands of that department of government which, in addition to being always in session and unhindered by the delays and influences besetting legislative enactments, is likewise qualified, through actual experience, to formulate salutary rules, when it titled the legislative enactment:

"An Act to promote the speedy determination of litigation on the merits and authorizing the supreme court to make rules relating to pleading, procedure and practice in the courts of this state."

In 1913, the legislature of Colorado enacted a statute giving the supreme court of that state power to "prescribe rules of practice and procedure in all courts of record . . ." A rule adopted by the supreme court under this authority was challenged as being a delegation of legislative authority. Said the court:

"This court has always been of the opinion, we believe unanimously so, that the act of 1913 was not a delegation of legislative authority. The regulation of its own practice and procedure has always been a matter for the court except so far as the legislature has interfered. See 15 C. J. 901. The act of 1913 restored that power which other legislatures had partially taken away and gave the added power to make rules for lower courts, just as other states have done, and as Congress gave the United States Supreme Court power to make rules in equity. 15 C. J. 904. We have, in effect, held this act valid whenever we have passed or enforced a rule governing the *nisi prius* courts, and all courts have been governed by its terms for 10 years. Counsel are mistaken in supposing the matter

has not been carefully considered. These questions were discussed deeply by the Legislature and briefs were prepared by the ablest counsel. The American Bar Association has considered the matter, and a number of states have adopted the system or something like it." *Ernst v. Lamb,* 73 Colo. 132, 213 Pac. 994.

A New Jersey act of 1915, granting to the chancellor power to regulate procedure by rules, was sustained by the court of chancery in that state in *Weinberger v. Goldstein,* 99 N. J. Eq. 1, 132 Atl. 659, although the constitutionality of the act is not discussed in the opinion. The state of Delaware passed a similar act in 1925. Session Laws of Delaware, 1925, p. 531.

We think it follows that the legislature, although formerly functioning in this state as the source of rules of practice and procedure in the courts, did not, in so doing, perform an act exclusively legislative, and may, if it so desires, transfer that power to the courts without such act being a delegation of legislative power.

[2] A point more difficult of solution is presented in the second question raised. Section 24 of art. IV of the state constitution provides:

"RULES FOR SUPERIOR COURTS:—The judges of the superior courts shall, from time to time, establish uniform rules for the government of the superior courts."

It is urged by relators that this section of the constitution confers on the superior courts alone the power to make rules for their government, and that any statute which gives the supreme court authority to enact rules for the guidance of the superior courts is unconstitutional.

We have never had occasion to construe this section of the constitution before, although it has received

legislative construction for many years. If interpreted as relators contend that it should be, as a constitutional grant of power to the superior courts, it would effectually prohibit the legislature itself from passing any statutes governing procedure and practice in the superior courts; yet it is a matter of common knowledge that since statehood it has been the customary and usual practice of the legislature to legislate upon such rules. Such action upon the part of the legislature, following closely upon the heels of the adoption of our constitution, and by those familiar with its purposes, if not actually the framers of § 24, strongly indicates that section was never intended to be an exclusive grant of power. Nor have the acts of the legislature during the succeeding years been challenged upon the ground that the power to make rules lay with the superior courts, but the courts have continually acquiesced therein.

It seems to us that the purpose of § 24 was to insure *uniform* rules of minute procedure, and that it should be construed, not as a grant of power to make broad and general rules, but as a limitation upon the courts requiring that the customary rules having to do with the *minutiæ* of court government should be uniform in character, so that attorney and client should not be hampered by finding petty rules in each court differing according to the views of the particular judge who presided over the tribunal. That the superior courts have also conceived that this is the correct view may be demonstrated by an inspection of the rules adopted by the judges of the superior courts from time to time, nearly all of which have for their purpose a uniformity in the details of procedure, so that trials and hearings may be had with the least inconvenience to court and counsel. A legislative interpretation of § 24, coupled with an acquiescence upon the part of the

courts and a like interpretation by them, should have great weight with us in determining the proper view of the constitutional provision.

Another point should be mentioned. Nowhere is there a constitutional provision that the supreme court shall have power to make rules for its own government. It can hardly be contended that the able framers of the constitution intended to grant the superior courts power to make rules and deny it to the supreme court. The power to make rules for its general government has always been an attribute of the court. The framers of the constitution, realizing this, saw that there was no need for such a grant of power to either the supreme court or the superior courts. But being men of practical experience, they saw that while there would be but one set of rules adopted by the supreme court, because it was a single body meeting always in one place, there might be as many sets of rules in the superior courts as there were superior judicial districts, and to obviate either conflict therein or disadvantage to those who resorted to the courts, they inserted § 24 to insure their uniformity.

If further proof be required to establish that this is the correct interpretation of § 24, it may be found in § 5 of art. IV of the constitution, where provision is made for the superior courts and the election of judges. That section, after providing for the number of judges and the sessions to be held, further provides:

". . . and the business of the court shall be so distributed and assigned by law, or, in the absence of legislation therefor, by such rules and orders of court as shall best promote and secure the convenient and expeditious transaction thereof."

Being satisfied as we are that § 24 is not a grant of power, we are faced with the question of determining

whether the legislature, having heretofore exercised the power of making rules for all the courts, can delegate the power to one court to make rules for another. Bearing in mind that this is not a delegation of a power that is purely legislative, but one that may rightly be delegated to another tribunal, is there anything violative of fundamental law or the constitution in permitting the highest judicial body in the state to prescribe rules for an inferior judicial body? Since this is a case of an appellate court prescribing rules for a trial court, it must at once be manifest that such a power should be placed with the reviewing court, since it is always charged with the duty of determining whether the rulings of the trial court have been such as to operate to the disadvantage of the litigants. *State ex rel. Ross v. Call,* 39 Fla. 504, 22 South. 748. This need has been recognized from the earliest times. It has been the source of much historical investigation and the results thereof have been succinctly stated by that able lawyer and scholar, Dean Roscoe Pound, who has summed the matter up in an article in 10 Ill. Law Rev., p. 172:

"As to trial courts, the historical argument already made is decisive of the power of the reviewing court of general jurisdiction to govern procedure by general rules, if not precluded by legislation. As the English judicial organization stood at the time our constitutions were adopted, trials were not had in the courts of Westminster, as a rule. Trials at bar in the superior courts were rare. Causes were heard at circuit before the King's justices or commissioners of assize and *nisi prius,* so that a justice of the King's Bench might try at circuit under a commission of assize and *nisi prius* a cause depending in the Common Pleas or vice versa. In other words, the trial courts were independent tribunals, quite as old as the superior courts. But the proceedings at circuit were reviewed on motion for new trial, motions in arrest,

motions for judgment and the like in the superior courts, in bank at Westminster. When our constitutions were adopted, practice for these cases was regulated by general rules of the superior courts at Westminster, some of which had been in force since the seventeenth century.

"It would seem, therefore, that the supreme court of one of our states, which has always been looked upon as the historical equivalent of the court of King's Bench, might constitutionally be given the power to regulate the practice, in the causes it has the power to review in bank, as was the doctrine at common law as between the court at Westminster and the circuits.

"It should be noted that the statute of Colorado, enacted at the instance of the Bar Association of that state, proceeds upon this very theory.

"Moreover, this power of the highest court of general jurisdiction of the state, representing the King's Bench in the common-law judicial organization, to make general rules of practice which should govern also in the practice of inferior independent tribunals whose proceedings it had the power to review, was recognized in American legislation until the later tendency to govern every detail of procedure by statute caused the power for a time to become forgotten."

[3] A minor attack upon the rule needs here to be mentioned. It will be noticed that the Laws of 1925, Ex. Ses., p. 187 (Rem. 1927 Sup., § 13-2), provides that,

"Sec. 2. When and as the rules of courts herein authorized shall be promulgated all laws in conflict therewith shall be and become of no further force or effect."

It is argued that, since the statute takes effect upon the happening of a subsequent event, to wit, the making of the rules by the court, there is such a contingency as to destroy the effect of the legislation. The weight of authority is that a statute is not unconstitutional because it does not take effect until the

happening of a subsequent event. Many authorities might be cited, but we deem it sufficient to quote from the text of 12 C. J., p. 864, where the authorities are collated:

"Where an act is clothed with all the forms of law and is complete in and of itself, it is fairly within the scope of the legislative power to prescribe that it shall become operative only on the happening of some specified contingency. Such a statute lies dormant until called into active force by the existence of the conditions on which it is intended to operate."

[4] It is also contended that some of the rules enacted by this court are not in the interests of procedure and practice, but invade the realm of substantive law. We pass over the arguments addressed to rules other than § 5, since that one alone is here in controversy. It seems plain to us that the taking of depositions is an act in the procedure and practice before the courts. It involves the receiving of evidence before the courts, a matter for the courts to determine, and which in no wise trespasses upon the substantive rights of parties. It is said in opposition to the rule that to be required to give evidence before a notary prior to trial is an unfair ordeal; that it partakes of the attributes of "a fishing expedition"; that there is no limit to the investigation save the boundaries of the curiosity or impertinence of the examiner; that the information once obtained will permit wholesale perjury when trial finally ensues, and that in any event the present legislative enactment providing for the taking of depositions under certain circumstances is sufficient. But these arguments go rather to the necessity or wisdom of the rule. Such arguments were presented to the state judicial council which recommended the rules to the court before their adoption, and may properly be offered at a later time should the rule in practice de-

velop to be unwise, but they avail little when presented against the power to enact the rule.

The other questions raised do not require extended discussion in this opinion. We conclude that the legislative act is constitutional, and that the rule is effective.

The petition for the writ is denied.

FRENCH, TOLMAN, MAIN, MITCHELL, and PARKER, JJ., concur.