[No. 21235. *En Banc.* August 9, 1929.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
PAVELICH et al., *Appellants.*[1]

[1]Reported in 279 Pac. 1102.

*Turner, Nuzum & Nuzum* and *Edward M. Connelly,* for appellants.

*Chas. W. Greenough* and *Frank Funkhouser,* for respondent.

HOLCOMB, J.—These appellants were convicted of the crime of being jointists of an offense alleged to have been committed at a different time, but at the same place as that alleged and involved in *State v. Pavelich,* 150 Wash. 411, 273 Pac. 182.

Unsuccessful motions were made by appellant Pavelich and Mason in arrest of judgment, and by all of the appellants for a new trial.

The first error urged as a ground for reversal is that the court erred in failing and refusing to instruct the jury that no inference of guilt could be drawn from the failure of defendants to testify in the case. In this case, unlike the preceding case, *State v. Pavelich, supra,* involving this question, no request was made for any such instruction. Appellants merely excepted to the failure of the court of its own motion to give such an instruction. This was not sufficient to save such error. *State v. Ross,* 85 Wash. 218, 147 Pac. 1149; *State v. Walker,* 104 Wash. 472, 176 Pac. 315; *State v. Thorp,* 133 Wash. 61, 233 Pac. 297; *State v. Pavelich, supra.*

██ Much learned argument is devoted by appellants to the rule-making power of this court, by virtue of Laws of 1925, Ex. Ses., p. 187; Rem. 1927 Sup. § 13-1 *et seq.*, which unfortunately has been decided against them, as to the constitutionality thereof and the power of this court to abrogate laws relating to practice and procedure in conflict therewith, by our decision in *State ex rel. Foster-Wyman Lumber Co. v. Superior Court*, 148 Wash. 1, 267 Pac. 770.

While the argument of appellants is arresting in its rare ability, profundity of thought and learning, and very persuasive as to some of the points raised, since the court has deliberately decided, respecting the fundamental phase of the question, to the contrary, it is profitless to pursue such discussion further.

██ Appellants further contend that the particular rule in question, subdivision 1, Rule IX, Rules of this court, 140 Wash. xli (Rem. 1927 Sup., § 308-9), invades the realm of substantive law. Texts and authorities are cited and quoted, defining what constitutes practice and procedure.

These are to the general effect that what constitutes practice and procedure, in the law, is the mode of proceeding by which a legal right is enforced,

". . . that which regulates the formal steps in an action or other judicial proceeding; the course of procedure in courts; the form, manner and order in which proceedings have been, and are accustomed to be had; the form, manner and order of carrying on and conducting suits or prosecutions in the courts through their various stages according to the principles of law and the rules laid down by the respective courts." 31 Cyc. Law & Procedure, p. 1153; *id.*, 32, § 405; Rapalje & Lawrence's Law Dictionary; Anderson's Law Dictionary; Bouvier's Law Dictionary.

Procedure is a broader term than practice. It includes in its meaning whatever is embraced by the

three technical terms, "pleading," "evidence" and "practice." *Kring v. Missouri,* 107 U. S. 221 (citing Bishop, Criminal Procedure).

Rules of evidence constitute substantive law, and cannot be governed by rules of court. *Patterson v. Winn,* 5 Pet. (U. S.) 232.

A substantive right of a litigant existing under the law cannot be abrogated by courts under the guise of rules of court; citing: *Laurel Canning Co. v. Baltimore & Ohio R. Co.,* 115 Md. 638, 81 Atl. 126; *State ex rel. Plummer v. Gideon,* 119 Mo. 94, 24 S. W. 748; *People v. Metropolitan Surety Co.,* 164 Cal. 174, 128 Pac. 324; *Chicago City R. Co. v. Sandusky,* 198 Ill. 400, 64 N. E. 991; *Territory ex rel. Kelly v. Stewart,* 1 Wash. 98, 23 Pac. 405; *State v. Eyres Storage & Distributing Co.,* 115 Wash. 682, 198 Pac. 390; *Kilbourn v. Thompson,* 103 U. S. 168; *Field v. Clark,* 143 U. S. 649.

*Nudd v. Burrows,* 91 U. S. 426, is also cited to the effect that the form or substance of a charge to a jury is not practice within the conformity act of congress, as fitting this case with precision.

All of the foregoing propositions are sound, and we are not disposed to disagree with any of them.

Rules of evidence are substantive law, found in the common law, chiefly, and growing out of the reasoning, experience and common sense of lawyers and courts.

Generally, the form and substance of instructions of courts to juries, comprise the essential rights of litigants before the court, and consist of substantive law. The state practice relative to the manner and form of instructing juries would not control in the absence of provisions for conforming thereto adopted by the Federal procedure acts.

Certainly, a substantive right of a litigant, existing under a constitution or statute, cannot be taken away by a mere rule of court, standing alone.

Nor do we believe that the legislature can delegate to the courts, or the courts assume the power, to abrogate substantive law. We have so held, in effect, in the *Pavelich* case, *supra*.

But practice is "the mode of procedure by which a legal right is enforced;" "the course of procedure in courts." It "regulates the course of procedure in courts." Undoubtedly it originated in courts and developed in the ancient courts of common law and equity jurisprudence. Because of great evils developing in the courts, both in non-action and corruption, the lawmaking bodies interfered for the regulation of practice and procedure, in which the courts, because of their disrepute, acquiesced. Since that period, both branches have exercised the rule-making power—the courts to a more limited extent than the legislatures.

While procedure is, to some extent, broader than practice, it seldom includes substantive rights. When it does, it is by reason of some constitutional or fundamental right. In such case, no rule of court can abolish it. Such, as we view it, is not the case here. While practice and procedure are not always identical, they are always correlative. One cannot exist without the other.

The old statute, Rem. Comp. Stat., § 2148, was a mixture. It comprised some constitutional rights (*State v. Pavelich, supra*), some substantive rights, and others manifestly within the category procedure and practice.

If that portion abrogated by Rule IX belongs to the last category, and the court has the power, as we held in the *Foster-Wyman* case, *supra,* to alter or abolish such provisions, then, manifestly, it is valid.

Although the distinction between procedure and substantive law is not always well understood and is sometimes vague and indistinct, substantive law is well defined in *Mix v. Board of Commissioners,* 18 Idaho 695,

112 Pac. 215, as that part of the law which creates, defines and regulates rights as opposed to adjective or remedial law, which prescribes the method of enforcing rights, or of obtaining redress for their invasion. It is difficult, therefore, to draw the line in any particular case, beyond which legislative power, over remedy and procedure, cannot pass without touching upon the substantial rights of the parties affected, as it is impossible to fix that boundary by any general condition.

In *Beazell v. Ohio,* 269 U. S. 167, among other things, that court said:

"Expressions are to be found in earlier judicial opinions to the effect that the constitutional limitation may be transgressed by alterations in the rules of evidence or procedure. [Citing cases.] And there may be procedural changes which operate to deny to the accused a defense available under the laws in force at the time of the commission of his offense, or which otherwise affect him in such a harsh and arbitrary manner as to fall within the constitutional prohibition. [Citing cases.] But it is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited."

In another case by that court, *United States v. Grimaud,* 220 U. S. 506, among other things, it said:

"It must be admitted that it is difficult to define the line which separates legislative power to make laws, from administrative authority to make regulations. 'It will not be contended that congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But congress may certainly delegate to others, powers which the legislature may rightfully exercise itself.' "

In *Hewitt Logging Co. v. Northern Pacific R. Co.,* 97 Wash. 597, 166 Pac. 1153, 3 A. L. R. 198, this court said:

"To define procedure, to make a condition precedent, and to fix a limitation does not destroy the force of the constitution. On the contrary, a law so providing makes it efficient, certain and uniform in its operation. The substantive right remains; that is all the citizen can insist upon, for it is held under authority without limit that no litigant has a vested right in procedure so long a⸱ ʰⁱs right of action is not abolished."

So in this case: no substantive right of appellants has been abolished. They still have the right to a fair and impartial trial, by a fair and impartial court, before a fair and impartial jury. They still have the right to stand upon their plea of not guilty, remain silent and require the state to establish their guilt to the satisfaction of the jury beyond a reasonable doubt. They still have the right to compulsory process for the attendance of their witnesses, and to confront the witnesses against them face to face. They still have the right to counsel for their proper defense. We deem all of the foregoing, and possibly some others not now recalled, substantive rights. None of these could be abrogated or impaired by any rule of court.

But the original statute, § 2148, *supra,* in the beginning, was largely a procedural statute. It was a statute providing for compelling the attendance of witnesses; rendering the defendant in a criminal case competent as a witness in his own behalf; guaranteeing the constitutional right that nothing should be construed to compel him to offer himself as a witness in such case and then further provided that it should be the duty of the Court to instruct the jury that no inference of guilt should arise against the accused if he should fail or refuse to testify in his own behalf.

The last proviso in the statute was not a constitutional provision, but merely a statutory and procedural provision. Under that last proviso, this court, from

the earliest time, held that it was the mandatory duty of a trial court in the trial of a criminal prosecution to instruct the jury in accordance with that proviso. *Linbeck v. State,* 1 Wash. 336, 25 Pac. 452. Re-affirmed in *State v. Myers*, 8 Wash. 177, 35 Pac. 580.

When, however, the mandatory duty of the court contained in the last proviso of § 2148, *supra,* was abolished by the rule of this court, that abrogation only went to the mandatory duty of the trial judge as it theretofore existed. The other constitutional and statutory protections of defendants in criminal cases remained. In any such case, where the defendant desires it, an instruction should be given by the trial court to the effect that no inference of guilt shall arise by reason of the fact that the accused failed to take the witness stand in his own behalf. In such case, the protection thrown about the accused applies also to the attorney conducting the prosecution of such case, who has no right to unlawfully comment upon the failure of the accused to testify in his own behalf.

Since in this case, appellants made no request for such an instruction, this case is therefore not within the rule of our decision, just re-affirmed *En Banc,* in *State v. Pavelich, supra.*

Our conclusion is that subd. 1, Rule IX (Rem. 1927 Sup., § 308-9), is a valid exercise of the rule-making power, conferred upon, or re-transferred to the court, to the extent of abrogating so much of § 2148, *supra,* as mandatorily compelled trial courts to instruct juries in criminal cases as formerly; but when properly requested to give such instruction by a defendant, it should be given, as decided in *State v. Pavelich, supra.*

■ Appellants also contend that instruction No. 1 was erroneous, which reads:

"Under the law, each of the defendants is presumed to be innocent of the offense of which he stands ac-

cused, and that presumption attends him throughout the trial and until such time in your deliberation as you find it to have been overcome from the evidence and are satisfied of his guilt beyond a reasonable doubt.''

Decisions from Wisconsin and Indiana holding that such instruction is erroneous because the

''. . . presumption of innocence attends the defendant throughout the whole trial and not merely *until* such time, if at all, as it is overcome by incriminatory evidence,''

are cited. *Emery v. State,* 101 Wis. 627, 78 N. W. 145; *Farley v. State,* 127 Ind. 419, 26 N. E. 898; *Riley v. State,* 187 Wis. 156, 203 N. W. 767; *Roen v. State,* 182 Wis. 515, 196 N. W. 825, and *Windahl v. State,* 189 Wis. 424, 207 N. W. 694.

An examination of the authorities cited discloses that Indiana and Wisconsin are thoroughly committed to the rule so stated. While we doubt whether we should be inclined to follow such technical decisions, based upon the use of the word ''until'' as erroneous, in this state we have a statute which controls. Rem. Comp. Stat., § 2308, reads:

''Every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt; . . .''

It will be observed that our statute uses the word ''until'' which is condemned by the courts of Indiana and Wisconsin.

Since the instruction complained of in this case is in language almost identical with the statute upon that subject, it cannot be said to be erroneous.

■ While there was ample evidence to go to the jury to sustain the conviction of appellants Komich and Kalofat, who were, according to the evidence, actively operating as bartenders at different shifts during the

day and night in question, the evidence connecting appellants Pavelich and Mason with the operation of the place as a joint is somewhat slender. While there was probably barely sufficient to connect them therewith and to take the case to the jury under the testimony of the officers who made the raid and arrested them, there was also evidence on their behalf, which was not contradicted, that one Carr had taken out the license for a soft-drink establishment at the premises involved; that the license was still in his name; that he had appeared personally before the mayor and talked personally with the license inspector of the city concerning the license; that he had purchased goods from certain jobbers who collected the cost thereof from him about twice a month, and had never collected anything for the sale of goods from either Pavelich or Mason.

As contravening this evidence, respondent contends that the evidence in the record which showed that Pavelich and Mason had been seen around the place frequently for several months prior to the raid and arrest; and that, when Pavelich was arrested, he was unruly, refused to listen to the warrant, wanted to fight and threw something, which one of the officers thought was a key, into a back room amongst some rubbish stored there—was sufficient to connect them with the joint. In view of the nature of the evidence against, and in favor of, these appellants, an instruction given by the trial court (No. 6) becomes important. Error is claimed by appellants to the giving of this instruction. It reads:

"The words 'conduct' and 'maintain,' as used in these instructions, are applicable to persons engaging, participating or co-operating in the instituting, administering or maintaining of the place alleged to have been conducted or maintained for the unlawful sale of intoxicating liquor, regardless of what may be the peculiar relations they sustain to it or to each other in

rendering such co-operation. They apply either to one who controls the place or knowingly permits the illegal use of the same, or to one who engaged in the illegal use and thus maintains or aids in maintaining the alleged place.

"If you should find beyond a reasonable doubt that the premises, or any portion thereof, at 230 North Washington street, in the city of Spokane; Spokane county, Washington, was at the time alleged in the information a place conducted or maintained for the unlawful sale of intoxicating liquor, then all persons engaging, participating or co-operating in the process of conducting or administering said place, with knowledge of such unlawful purpose, are in law conducting or maintaining the same, regardless of what may be the peculiar relations they sustain to it or to each other, and are jointists; and in determining whether or not the place in question, or any portion thereof, at the time mentioned in the information, was conducted or maintained for the unlawful sale of intoxicating liquor, and whether or not the defendants, or any of them, had knowledge of such unlawful purpose and engaged, participated or co-operated in the process of conducting or administering said place, you should take into consideration all the facts and circumstances as disclosed by the evidence in the case."

Appellants insist that, under that instruction, it was possible and that it presumably did appear to the jury as authorizing the conviction of Pavelich and Mason if liquor was sold with their knowledge or if they in any manner participated therein; that there was evidence in the case that Pavelich and Mason had taken a drink which somebody else bought, and the jury could conclude that taking a drink by Pavelich and Mason was participation in the conduct of the place; that the instruction also informed the jury that all persons engaging, participating or cooperating in the instituting, administering or maintaining the place with knowledge of its unlawful purpose, are in law conducting or main-

taining the same, *regardless of what may be the peculiar relations they sustain to it or to each other.*

The italicized words are criticized, and it is asserted that the statute does not so define a jointist; that it prescribes that if one opens up or maintains either as owner, proprietor, agent or servant, and limits the jointist's crime to those acting in that capacity. As an illustration, counsel say:

"If a man rents a building to an individual and steps in and sees that individual selling liquor, under Judge Webster's instruction, he would be guilty of being a jointist, although he had nothing to do either as owner, proprietor, agent or servant."

We appreciate the force and weight of the argument against this instruction. However, the statute is broad and comprehensive in terms. There was some evidence tending to connect these appellants with the offense charged. In such a case, something must be left to the integrity and discretion of trial courts and the honesty and common sense of jurors.

That the trial court was justified in giving this instruction, is shown by our approval of one in almost identical language, in *State v. Pistona,* 127 Wash. 171, 219 Pac. 859.

While there is some difference in verbiage, it is so slight as to be immaterial. See, also, *State v. Perrin,* 127 Wash. 193, 220 Pac. 772.

The judgment must be and is affirmed.

MITCHELL, C. J., TOLMAN, MILLARD, and PARKER, JJ., concur.

BEALS, J. (dissenting)—While I am in entire accord with the opinion of this court in the case of *State ex rel. Foster-Wyman Lumber Co. v. Superior Court,* 148 Wash. 1, 267 Pac. 770, in my opinion the portion of Rem. Comp. Stat., § 2148, attempted to be abrogated by Rule IX of the rules of pleading, etc., adopted by

the supreme court January 14, 1927 (Rem. 1927 Sup., § 308-9), is substantive law and consequently not subject to abrogation by any rule of court adopted pursuant to chapter 118, Laws of 1925, Ex. Ses., p. 187 (Rem. 1927 Sup., § 13-1). For this reason, I dissent from the opinion of the majority.

FRENCH and MAIN, JJ., concur with BEALS, J.

FULLERTON, J. (dissenting)—I concur in all that is decisive in the opinion of the majority, save as to the conclusion reached on the instruction referred to therein as instruction No. 6 of the trial court. In my opinion, the instruction states the rule too broadly. I fear that it brings within the jointist act a class of persons whom this court has heretofore determined are not amenable to the provisions of the act. The instruction does not, as I read it, fall within the rule of the cases of *State v. Pistona,* 127 Wash. 171, 219 Pac. 859; and *State v. Perrin,* 127 Wash. 193, 220 Pac. 772, cited in the majority opinion; nor within the rule of the cases of *State v. Proffer,* 127 Wash. 270, 220 Pac. 774, *State v. Anderson,* 132 Wash. 551, 232 Pac. 275, and *State v. Dahl,* 139 Wash. 644, 247 Pac. 1023, further relied upon to support the instruction. In the cited cases, the court, after stating the rule in the general language of the instruction given in the instant case, took pains to point out the character of the acts of participation which would bring the accused persons within the rule. In the instant case, this was not done, and herein, I think, lies the error.

The error is not without its importance in so far as two of the appellants are concerned. The jury could well have found that the only part these two had in the maintenance of the place was to buy drinks therein. This, it may be, subjected them to punishment as for the commission of a misdemeanor, but I cannot con-

ceive that it subjected them to punishment as for the commission of a felony. The court's instruction ignored this distinction. Under it, the jury were warranted in finding them guilty of a felony, even though their participation in the acts of maintenance were no more than the indicated acts, and I fear they were misled.

I think there should be a new trial.