[No. 990-1.    Division One—Panel 2.    April 24, 1972.]

LANGSTON TABOR et al., *Appellants*, v. FRANK MOORE
et al., *Respondents*.

*David Allen, John Gant,* and *Lar Halpern* (*Cornelius Peck,* of counsel), for appellants.

*Christopher T. Bayley, Prosecuting Attorney,* and *Kenneth W. Sharaga, Deputy,* for respondents.

JAMES, J.—Plaintiffs, asserting their standing as taxpayers, allege: (1) that the criminal law enforcement officials of King County and the City of Seattle are engaged in a deliberate "continuing and on-going practice of holding persons arrested without warrants on 'open-charge' or 'sus-

picion' bookings for unreasonable lengths of time"; (2) that such a practice is "illegal and violative of the Fourth, Sixth, Eighth and Fourteenth Amendments to the *United States Constitution,* as well as Article 1, Sections 3, 7, 10, 20, and 22 of the *Washington State Constitution*"; and (3) that these illegal acts necessarily involve the illegal expenditure of public funds in the payment of salaries and the operating costs of the city and county jails, and are therefore a "direct, definite, increasing and on-going tax burden."

Plaintiffs ask that the court "grant, alternatively or cumulatively, declaratory, injunctive and mandamus relief"; that the court order defendants and their employees to cease and desist from the practices complained of; that a writ of mandamus be issued requiring defendants to take arrested persons before a magistrate without unreasonable or unnecessary delay; that an order be entered prescribing personal recognizance and bail procedures; and that defendants submit a plan to implement the judgment of the court. Plaintiffs urge that such a plan require that arrested persons be brought before a magistrate within a fixed number of hours unless an application for an extension of time, based upon a showing of good cause, be made to the presiding judge.

The learned trial judge concluded that plaintiffs lacked standing to prosecute the action and granted defendants' motion for a summary judgment of dismissal. We affirm, but do not reach the question of "standing." Rather, we base our decision upon the more fundamental reason that the judiciary does not have the power to *directly* supervise law enforcement officers.

Concern that law officers do not themselves break the law in attempting to enforce it has long troubled the courts.[1] Mr. Justice Brandeis articulated the judiciary's

---

[1] See H. Wingo, *Growing Disillusionment With the Exclusionary Rule,* 25 Sw. L.J. 573 (1971); W. Burger, *Who Will Watch the Watchman?,* 14 Am. U.L. Rev. 1 (1964); A. Blumrosen, *Contempt of Court & Unlawful Police Action,* 11 Rutgers L. Rev. 526 (1957); A. Beisel, Control Over Illegal Enforcement of the Law (1955).

concern in his dissent in *Olmstead v. United States,* 277 U.S. 438, 485, 72 L. Ed. 944, 48 S. Ct. 564, 66 A.L.R. 376 (1928):

> In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution.

A wholly acceptable and effective way to "police the police" has not yet been found. Four alternatives to direct court supervision have been tried. They are: (1) the exclusion of evidence; (2) the imposition of criminal penalties against police officers; (3) the bringing of civil damage actions against police officers by the aggrieved parties; and (4) the use of disciplinary sanctions within the police department. Now Chief Justice Warren Burger has proposed an *independent* review board to recommend disciplinary action. W. Burger, *Who Will Watch the Watchman?,* 14 Am. U.L. Rev. 1 (1964).

In each of the first three alternatives, the court functions within its constitutionally authorized arena on a *case-by-case* basis. The exclusion of evidence as an antidotal remedy is a case law concept. Similarly, the recovery of damages by civil suit is a common-law remedy. By statute, criminal penalties may be imposed against law enforcement officers who ignore constitutionally guaranteed civil rights.[2]

---

[2] *See, e.g.,* RCW 9.33.020, refusing an arrested person permission to communicate with his friends or with an attorney; RCW 10.79.040 and 10.79.045, searching a private dwelling house without the authority of a search warrant; RCW 9.73.030 and 9.73.080, intercepting, recording, or divulging private communications without first obtaining the consent of all the participants or without first obtaining a court order permitting interception.

The only alternative which has been consistently and universally employed is the exclusion of evidence under the so-called "suppression doctrine" or "exclusionary rule." And critics of this practice have become increasingly vocal.

> To challenge, as I do, the oft-repeated claim that suppression of evidence operates as a deterrent on police, is not to attack the doctrine itself, for courts are bound to uphold constitutions and statutes. But society must inquire whether the Suppression Doctrine has in fact accomplished its stated purpose of deterrence and meet the frustrated and plaintive cry that "There *must* be a better way to do it."

W. Burger, *Who Will Watch the Watchman?*, 14 Am. U.L. Rev. 1, 10 (1964).

A. Blumrosen, *Contempt of Court & Unlawful Police Action*, 11 Rutgers L. Rev. 526 (1957) points out that none of the four alternatives has been wholly satisfactory and suggests, as plaintiffs assert, that "contempt of court" penalties might be a more effective device in confining police officers to legitimate channels of crime detection.

Wigmore, concerned with warrantless search and seizure, and perhaps with tongue in cheek, asserted that:

> The natural way to do justice here would be to enforce the healthy principle of the Fourth Amendment *directly,* i.e. by sending for the high-handed, over-zealous marshal who had searched without a warrant, imposing a thirty-day imprisonment for his contempt of the Constitution, and then proceeding to affirm the sentence of the convicted criminal.

(Italics ours.) 8 J. Wigmore, Evidence § 2184a n.1, at 31 (McNaughton rev. 1961).

■ Assuming, as plaintiffs allege, that a deliberate "open charge" detention practice which violates constitutional "due process" safeguards does exist, we can envisage a court rule, enforceable by the contempt power, which might effectively accomplish the objectives of plaintiffs' prayer. We are satisfied, however, that such a rule must be legislatively enacted, either by statute or by court rule *specifically* authorized by statute.

The establishment of three co-equal branches of government—executive, legislative, and judicial—and the allocation of power among them, is the essence of the American system of government. The disbursement of power is designed to prevent the eventual concentration of *despotic* power.[3]

> The accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, and whether hereditary, self appointed, or elective, may justly be pronounced the very definition of tyranny.

The Federalist No. 47, at 324 (J. Cooke ed. 1961) (Madison). It is the judiciary's responsibility to assure that the system of checks and balances thus established is maintained. Consequently, it is critically important that the judiciary scrupulously resist any temptation to assume power not clearly inherent in the judicial function.

■ Criminal law enforcement is necessarily a hybrid exercise of governing power. While arrest and initial jailing of the criminally accused is clearly an executive "police" function, the point at which the criminal process passes from an executive to a judicial function is obscure.

> Law enforcement agencies are attached to the executive branch of the Government. Consequently under our basic and fundamental tripartite division of the departments of the Government, the judiciary has no power of supervision or control over them. This authority is vested in their superior officers. On the other hand, the Courts may adopt rules of procedure and rules of evidence, which may result in limitations on the activities of prosecuting attorneys and law enforcement agencies, requiring them to modify or change some of their practices, possibly eliminating some of them and curtailing their activities.

(Footnote omitted.) *United States v. Mihalopoulos*, 228 F. Supp. 994, 1010 (D.C. 1964).

■ The Washington Supreme Court has, pursuant to

---

[3]See S. Ervin, *Separation of Powers: Judicial Independence*, 35 Law & Contemp. Prob. 108 (1970).

legislative authorization, adopted Criminal Rules for Justice Court[s], (JCrR). The order adopting the rules (Order 25700-A dated April 12, 1963), in citing *State ex rel. Foster-Wyman Lbr. Co. v. Superior Court,* 148 Wash. 1, 267 P. 770 (1928), impliedly recognizes that the court's rule-making power is delegated by the legislature and is limited to the adoption of "uniform rules of *procedure.*" (Italics ours.)

The Washington rules require, as do the federal rules, that an arrested person be taken "directly and without delay" before a magistrate and be permitted to deposit bail "as soon as practicable." JCrR 2.03(a)(b). "Directly and without delay" is defined as meaning "as soon as reasonably practicable." JCrR 2.03(d). It might be argued that the Supreme Court has thus determined by procedural rule that the court may directly supervise police conduct in the arrest and detainment of criminal suspects, but we think that the rules neither assert nor imply any *direct* supervisory authority over police officers.

In *State ex rel. Beardslee v. Landes,* 149 Wash. 570, 271 P. 829, 64 A.L.R. 973 (1928), a citizen obtained a writ of mandamus in superior court commanding the mayor and the chief of police "to enforce a vehicle parking ordinance of the city by arresting and prosecuting violators thereof." In reversing the trial court, the Supreme Court at first glance seems to base its decision solely upon consideration of the "practicability" of any plan to "oversee the performance of the duty sought to be mandamused." *State ex rel. Beardslee v. Landes, supra* at 572. The court, however, cites with approval the case of *People ex rel. Bartlett v. Busse,* 238 Ill. 593, 87 N.E. 840, 28 L.R.A. (N.S.) 246 (1909), and significantly quotes the following:

Counsel for appellants confuse the functions of the executive and judicial departments of government.

*State ex rel. Beardslee v. Landes, supra* at 572.

We are satisfied that it is not the "impracticability" of

plaintiffs' proposed remedy, but rather its constitutional infirmity which requires our affirming the trial judge's decision.

Affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.

Petition for rehearing denied July 5, 1972.

Review granted by Supreme Court August 21, 1972.