[No. 41958.     En Banc.     December 20, 1973.]

LIL IVERSON, *Appellant,* v. MARINE BANCORPORATION, *Respondent.*

*Lil Iverson, Herbert Lakefish,* and *Arthur G. Barnett,* for appellant.

*Graham, McCord, Dunn, Moen, Johnston & Rosenquist* and *Hans C. H. Jensen,* for respondent.

*Slade Gorton, Attorney General, Donald J. Horowitz, Senior Assistant,* and *William C. Collins, Assistant,* amicus curiae.

HUNTER, J.—This matter comes before us on the petitioner's motion to proceed in forma pauperis on appeal. She seeks an order providing for a waiver of filing fees and cost bond, and a free transcript and statement of facts.

This action was commenced as a wrongful eviction action in which judgment was entered for the petitioner (hereinafter referred to as plaintiff), Lil Iverson, in the amount of $1,000. Thereafter, the plaintiff attempted to appeal from what she alleges is an inadequate award of damages. Being without funds to perfect her appeal, she made application to the court for several orders which, in effect, would have allowed her to proceed on appeal without cost to her. These motions were denied, apparently on jurisdictional grounds. The denial of the plaintiff's motions effectively prevented her from proceeding with her appeal.

After the denial of her motions by the trial court, the plaintiff renewed her pro se motions in this court. The matter was heard in April of 1972. At that time the record did not reflect with any degree of certainty whether the plaintiff was in fact an indigent and it lacked sufficient information as to whether or not the appeal was in good faith and lacked frivolity. We declined to rule on the plaintiff's motions against such an indefinite background and

referred the case to the superior court for further determinations consistent with our opinion in *O'Connor v. Matzdorff*, 76 Wn.2d 589, 458 P.2d 154 (1969). To aid the trial court in its determinations and clarify the requirements for motions of this nature, we set forth the following guidelines concerning the plaintiff's motions.

1. Petitioner's motion and affidavit shall set forth the claim of indigence and supporting facts, and also aver that the appeal is in good faith and not frivolous. Petitioner may amend her motion and affidavits to comply.

2. Petitioner shall file a concise statement of the points on which she intends to rely on appeal, and if it is claimed that the evidence is insufficient to justify the judgment, she shall specify with particularity in what respect she believes the evidence is lacking. (The allegations of error need not be expressed in any technical form, but must clearly indicate what is intended.)

3. The trial court, guided by our opinion in *O'Connor v. Matzdorff, supra,* shall determine:

   a. petitioner's indigence or lack of indigence, and the factual basis for the determination;

   b. whether any allegations of error are frivolous and, if so, the reasons;

   c. whether the appeal is sought in good faith and, if not, the reasons for such determination.

4. If the trial court determines that petitioner is indigent and her appeal is in good faith and not frivolous, the court shall also determine whether the claimed errors and points relied upon

   a. are of such nature that they may be adequately presented and determined without necessity of a statement of facts by reference to the transcript; or

   b. may be adequately presented and determined by means of an agreed statement of facts (ROA I-34(5)) and, if so, whether such will be available to petitioner; or

   c. may be so presented and determined by means of a short record (ROA I-34(4)) and, if so, what portion of the stenographic transcript will be necessary to properly conduct the petitioner's appeal; or

   d. will require, for adequate presentation and determination, a full statement of facts.

Prior to making its determinations, the trial judge re-

quested that counsel assist the plaintiff in presenting what had previously been her pro se motions. With the aid of counsel, the trial court determined that the plaintiff's assets were insufficient to permit her to pay the costs of pursuing her appeal without deprivation of her basic living expense. This conclusion was based on the court's finding that: (1) the plaintiff's total monthly income including foodstamps is $181; (2) she does not own any property of value that could be liquidated or pledged as security for the purposes of obtaining finances sufficient to pursue her appeal; (3) she presently maintains a judgment in her favor against the defendant, Marine Bancorporation, in the sum of $1,000, but that amount is unavailable to her for use in pursuing her appeal due to the existence of an attorney's lien on said judgment in the amount of $1,050.

The court also concluded: (1) that the plaintiff's allegations of error in her appeal are not frivolous and her appeal is sought in good faith; (2) that the plaintiff's claimed errors and points relied upon are not of such a nature that they may be adequately presented and determined without the necessity of a statement of facts, or by means of an agreed statement of facts, or by means of a short record; (3) that the plaintiff's claimed errors and points relied upon in pursuing her appeal will require a complete transcript, including exhibits and a full statement of facts, except that counsel's opening statements and closing arguments are not necessary for review.

With this background as a reference we turn to the issues presented. Amicus curiae contends that this court has both a right and a duty stemming from the Constitution of the State of Washington to provide the plaintiff with the relief she requests. They argue that the state constitution sets up both the Court of Appeals and this court to handle a particular mission. That mission, they argue, is for the courts to hear and decide all cases regardless of whether the parties are rich or poor; that they be accessible to all citizens; and that they resolve individual and social con-

flicts regardless of whether the parties are rich or poor. We agree.

██ Const. art. 4, § 1 and § 30, vests the judicial power in the Supreme Court, Court of Appeals and superior courts of this state. Upon creation, these courts assumed certain powers and duties. *See O'Connor v. Matzdorff, supra,* and *In re Bruen,* 102 Wash. 472, 172 P. 1152 (1918). These duties include, among others, the fair and impartial administration of justice and the duty to see that justice is done in the cases that come before the court. The administration of justice demands that the doors of the judicial system be open to the indigent as well as to those who can afford to pay the costs of pursuing judicial relief. *O'Connor v. Matzdorff, supra.*

In the *O'Connor* case we stated on page 605:

> Were this court to hold that the Supreme Court has the power to waive prepayment of costs and that the superior court has a like power, but that no such power exists in justice courts, an anachronism would result. This would be tantamount to a holding that, if a poor person has a large claim, the courts will open their doors to him; but if his claim is small, those doors must be closed, simply because there were no justice courts at common law. . . .
>
> . . .
>
> The proper and impartial administration of justice requires that these doors be kept open to the poor as well as to those who can afford to pay the statutory fees.

Inherent within this reasoning and logic is the conclusion that financial inability to pay the costs of pursuing a legal remedy will not operate to bar one from this state's system of justice. An anachronism would also result were this court to hold that the doors of justice are to remain open to indigents at the trial level but closed at the appellate level. To hold that the plaintiff is not entitled to the relief she requests would be to hold that indigents are entitled to pursue their remedies, but not to their logical conclusion. Consistent with our affirmative duty to keep the doors of justice open to all with what appears to be a meritorious

168

claim for judicial relief, we hold that the plaintiff is entitled to the relief requested.

Having determined that this court has a duty to provide the plaintiff with the relief she requests, we hereby waive the requirements of a filing fee pursuant to ROA I-10(a) (1)(iii) (CAROA 10(a)(1)(iii)). It is also ordered, via the authority vested in this court under RCW 2.28.150, that costs of the preparation of the transcript be waived and the plaintiff be furnished one at no expense.

ROA I-22 (CAROA 22) requires that a bond for costs on appeal be filed with the clerk of the superior court when notice of appeal is given. This bond is designed to reimburse the respondent should he prevail. In *O'Connor v. Matzdorff*, 76 Wn.2d 589, 458 P.2d 154 (1969), we recognized that the power to make rules also contains the power to waive them. In pursuit of our duty to see that justice is done in all cases that come before us, we waive the requirement of a cost bond in order that the plaintiff may pursue her remedy. In doing this we recognize that there is no funding available to reimburse the defendant should he prevail. If, in fact, the defendant does prevail, he is authorized to file a claim with the legislature for the amount he is entitled to receive as costs, to the extent of the cost bond provided for in ROA I-22 (CAROA 22). This is the procedure we adopted in *Honore v. State Bd. of Prison Terms & Paroles*, 77 Wn.2d 660, 466 P.2d 485 (1970), wherein no funds were available to reimburse attorneys who were representing indigent prisoners who are entitled to representation. In that case, as in the instant case, the fact that funds are not available cannot prevent this court from performing its duty of administering fair and impartial justice to all regardless of economic status.

We note also that there is no apparent funding available for the furnishing of a statement of facts which the trial court has determined is absolutely necessary to process the instant appeal. We therefore order that a statement of facts be furnished by the official reporter in this case, and the

reporter is authorized to file a claim with the legislature for reimbursement.

■ To clarify our position, costs may not be waived in every appeal; they may be waived only after a determination, as in the instant case, that the appeal is not frivolous and that the plaintiff is, in fact, an indigent. As our order indicates, any method which minimizes the costs involved without jeopardizing the plaintiff's position must be utilized.

Consistent with fundamental fairness and in order not to overburden the public treasury, we hereby impose a lien upon all amounts over and above the original lien which the plaintiff may recover for the payment of cost incurred or for reimbursement to the state, as the case may be. If, in fact, the plaintiff does recover an increased amount, she will then be in a position to pay the cost incurred or to reimburse the state and should pay her share of the cost of her appeal.

We believe *O'Connor v. Matzdorff, supra,* is dispositive of the remaining issues raised by the various parties and therefore need not comment upon them further.

It is so ordered.

FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

HALE, C.J. (dissenting)—Litigation is fast becoming a major industry in this country. Since it produces no usable commodity and at best is no more than an evil necessary to the just and peaceable settlement of disputes in a free society, its growth should not be stimulated by the courts.

The court in this case, I think, not only encourages vain litigation but in doing so more performs perhaps an ill-advised charity than vindicates a constitutional principle. The money for this charity, when ultimately paid, must come from the public whose legislature has never appropriated and whose constitutions have never contemplated it. The award of a free statement of facts in private litigation is,

therefore, in excess of the court's powers and without sanction of law.

Another problem arises: If the legislature does not pay this fee, then the money will have to come from the court reporter in the form of free professional services and work. The court's act of charity thus includes a free statement of facts at public expense for wholly private purposes, but failing accomplishment will deprive the court reporter of his property without due process of law by directing him to do work he values at $1.50 per page, without payment. If the legislature does not pay this fee—which it is not, in my opinion, obliged to do—it is the court reporter who will be performing the charity and not this court.

The court persists in speaking of justice. It seems unjust to me, however, to direct the expenditure of public money for purely private purposes. Plaintiff here brings this case to vindicate a private wrong; the avails, if any, will inure wholly to her exclusively for her personal benefit in recovery of her personal claim or demand. This litigation has already cost the public far more than the amount in controversy. Speaking of justice, I think it an injustice that one person be afforded privileges and immunities at public expense not available to all persons under like conditions. If the court considered it just to furnish a free statement of facts to this plaintiff in this case, it must be prepared to do the same in the future to all persons of limited financial means. *All* persons, in justice, should include not only indigent persons or those nearly so but any persons having or put to the defense of any purely private claim or demand, the cost of which may materially impair the party's economic status.

For this reason, this court should not mistake the precedential effect of its opinion. This is no mere application to proceed in forma pauperis in a private action which at most entails no more than a waiver of the filing fee (*O'Connor v. Matzdorff*, 76 Wn.2d 589, 458 P.2d 154 (1969)), but constitutes an actual demand for a free statement of facts at public expense soon to be followed presumably by a de-

mand for appointment of counsel, preparation and furnishing of a transcript, preparation and costs of briefs—all at public expense in private litigation.

That plaintiff Lil Iverson was on public assistance when her cause of action against defendant Marine Bancorporation arose should be of no legal consequence. At no time did the Department of Social and Health Services of this state, nor its predecessor agency, nor any other agency of the state charged with providing financial aid and sustenance to impecunious persons, step forward to acknowledge that costs of private litigation were so essential to her well-being as to be advanced or assured as a part of her public assistance budget. No agency of the state administering a budget of public funds for the relief and remedy of economic distress has admitted the funding of private litigation to be a legitimate expenditure of public money. Court costs and attorney fees in private actions simply do not rank with food, shelter and medical care and necessary transportation as among the responsibilities which the public has thus far assumed.

The court now finds that, if those agencies already charged by law with providing public funds to indigent persons for food, rent, medical care, hospitalization, medicines and essential transportation will not do so, somehow the constitution, nevertheless, makes the state liable for the costs of private litigation. Just where the constitutions say or imply this I find impossible to locate. If the plaintiff has a constitutional right to a free statement of facts from the public treasury, then it inexorably follows that she has a constitutional right to free counsel, free transcript, free travel for herself and counsel to and from the places where the actual trial and appeals are to be heard. This has been legislatively and judicially recognized in criminal matters. Laws of 1965, ch. 133, p. 1382; ROA I-47. Assuming that the constitutional pivot for such a ruling is the fact of indigency, then what is to be the disposition where an indigent person brings action against one not quite indigent but nearly so? Where is the line to be drawn? Or, will the

court, to maintain equal protection, fix the line at a point where any person claiming a cause of action or asserting a defense or cross claim thereto, the expenses of which would substantially diminish his standard of living, must, as a matter of law, be deemed indigent for the purpose of determining whether he is entitled to a free statement of facts and free counsel in private litigation? Under the court's opinion, this court will have to answer these questions and soon, and on the basis of the precedent established by this case it must necessarily be held that nearly everyone except those of substantial means is entitled to litigate or defend private affairs at public expense.

Outside the fantasies in which courts occasionally indulge, there is no authority for the court's opinion in this case and practically no logic to sustain it. The leading case, of course, is *Boddie v. Connecticut*, 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971), a decision which simply held that, because the ultimate power to dissolve marriages had been placed exclusively in the courts of Connecticut and there existed no alternative means of dissolving a marriage, an indigent person could not be deprived of the capability of filing his divorce action because of lack of a filing fee. *Boddie*'s limitation to divorce cases is expressly shown in the court's declaration that "resort to the state courts is the only avenue to dissolution of . . . marriages' ", and on the rationale that, because no alternative means of dissolving a marriage existed, the state could not constitutionally deprive a poor person of the right to file his action solely because of inability to pay the filing fee. It takes an extraordinary stretch of the imagination to sensibly expand the *Boddie* rationale—even in divorce actions—to constitute a ruling that the courts of Connecticut must provide free statements of fact on appeal and a posteriori free transcript and counsel.

That *Boddie* is of extremely narrow application—one limiting it to waiver of filing or appearance fees in divorce actions—may be seen in the next case arising on a related subject. In *United States v. Kras,* 409 U.S. 434, 445, 34 L.

Ed. 2d 626, 93 S. Ct. 631 (1973), the court held that a petitioner had no constitutional right to free access to the bankruptcy courts. Referring to *Boddie,* the court ruled that one's interest in a bankruptcy discharge "does not rise to the same constitutional level" as one's inability to dissolve his marriage except through the courts. Accordingly, the *Kras* decision asserted the principle that the district court's refusal to waive an indigent's filing fee in bankruptcy did not constitute a violation of the indigent's constitutional rights to due process or equal protection of the law.

Next, *Kras* was cited as controlling in *Ortwein v. Schwab,* 410 U.S. 656, 35 L. Ed. 2d 572, 93 S. Ct. 1172 (1973), in which an Oregon statute requiring a $25 filing fee to be paid in applications made to the appellate courts to obtain review of agency decisions lowering welfare payments was questioned. Despite the acknowledged indigency of welfare recipients, the statutory fee for appellate review of administrative decisions was not equated with the *Boddie* decision upon which this court now rests its determination that the state now has a constitutional duty to provide a free statement of facts and presumably counsel, too, in private litigation brought by indigent persons seeking private remedies. This principle of discouraging the imposition of added burdens upon the public treasury for the payment of purely private purposes was extended to such quasi public matters as housing. *See Meltzer v. C. Buck LeCraw & Co.,* 402 U.S. 954 and at 936, 937, 941, 964, 966, 29 L. Ed. 2d 124, 91 S. Ct. 1624 (1971), denying certiorari to a series of indigent appellants who, because of indigency, were unable to post appeal bonds required in appeals from adverse judgments in housing eviction cases, or to pay court costs associated with other litigation. *Accord, Williams v. Shaffer,* 222 Ga. 334, 149 S.E.2d 668 (1966), *cert. denied,* 385 U.S. 1037, 17 L. Ed. 2d 683, 87 S. Ct. 772 (1967); *West Haven Housing Authority v. Simmons,* 5 Conn. Cir. Ct. 282, 250 A.2d 527, *appeal denied,* 156 Conn. 662, 243 A.2d 83 (1968).

This court should not make the mistake of assuming that to direct the furnishing of a free statement of facts to indigent persons in civil appeals brought for the personal benefit of the appellant is the constitutional equivalent of ordering a mere waiver of the filing fee in district court as in *O'Connor v. Matzdorff*, 76 Wn.2d 589, 458 P.2d 154 (1969); nor the approving referral to the legislature for the payment of attorney fees for an indigent prisoner in a habeas corpus proceeding. *Honore v. State Bd. of Prison Terms & Paroles*, 77 Wn.2d 660, 466 P.2d 485 (1970). In the present case, the court is virtually mandating that all indigent persons are entitled as a matter of constitutional law to free litigation including counsel, appearance fees, statements of fact, briefs and all other things essential to bringing, defending or prosecuting an appeal in private civil litigation. It will have to apply that principle in the interests of equal protection and freedom from special privilege and immunity to all persons, not only those who are indigent, or nearly so, but to everyone upon whom the costs of private litigation will have substantial financial impact.

That petitioner has not been denied due process of law is seen in the circuitous progress of this case. She commenced an action against Marine Bancorporation to recover damages for her wrongful eviction. She waived a jury and tried the case to the court which awarded her damages of $1,000.

Although she won a judgment she claimed error, in that the $1,000 award was insufficient, and demanded a new trial which, on hearing, was denied by the superior court in 1970; since that time her case has been winding through the appellate and trial courts unendingly. There, I think, the matter should have ended unless the plaintiff elected to spend her own money perfecting her own appeal.

Accordingly, I would affirm.