[No. 42427.    En Banc.    April 18, 1974.]

Lois Ashley, *Petitioner*, v. Superior Court for Pierce County, *Respondent*.

*Robert M. Reynolds* of *Pierce County Legal Assistance Foundation* and *Tony Karratt* of *Legal Services Center* (Seattle), for petitioner.

*Ronald L. Hendry, Prosecuting Attorney,* and *Arthur W. Verharen, Chief Civil Deputy,* for respondent.

*Slade Gorton, Attorney General,* and *William C. Collins, Assistant,* amicus curiae.

Rosellini, J.—On December 30, 1971, the petitioner and

one Vicky Lynn Marx sought to file their respective divorce actions in the Superior Court for Pierce County. They presented their proposed summonses and complaints, affidavits of poverty, affidavits of merit, and motions for leave to proceed in forma pauperis and for payment for cost of service at public expense, to the presiding judge. Notice of presentation was given to Pierce County, which appeared through the prosecuting attorney, in opposition to the motions. After argument the court denied the motions in all respects.

Both plaintiffs applied to the Court of Appeals, Division Two, for a writ of mandamus requiring the court to grant their motions. After the submission of briefs and argument by petitioners' counsel and the Prosecuting Attorney for Pierce County, the Court of Appeals on May 17, 1972, entered an order directing the writ of mandamus to issue in the case of Vicky Lynn Marx, whose husband resided and was present in Pierce County.

The court cited *Boddie v. Connecticut,* 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971), in which the Supreme Court held on similar facts that refusal by the Connecticut courts to allow access to the courts in actions for divorce because of indigency is a denial of due process of law. The court also cited and followed our case of *O'Connor v. Matzdorff,* 76 Wn.2d 589, 458 P.2d 154 (1969), holding that under that case the Superior Court has inherent power to waive the filing fees in a case of this kind, and also the inherent power to direct the Sheriff for Pierce County to serve process without charge.

With regard to the petitioner's case, the Court of Appeals said:

> [W]e doubt that the Superior Court has the inherent power to direct the fiscal agency of the county to disburse county funds to underwrite costs of publication. There is no court rule or legislative authority which would grant the fiscal agent the power to make such a disbursal of funds. The constitutional obligation to provide such funds would, in our judgment, fall on the state.

*See Boddie v. Connecticut,* [401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971)]. The state is not a party to this action and, consequently, we must deny the petition of Lois Ashley for publication costs. However, she has the right to file her action and seek the direction of the Washington State Supreme Court for obtaining cost of service by publication or some other means of substituted service.

A writ of mandamus was granted to the extent that the trial court was directed to allow the filing of the petitioner's summons and complaint without payment of the filing fees. The remainder of her petition was denied.

We granted the petitioner's application for certiorari, waiving the filing fee as had the Court of Appeals. The Attorney General of the State of Washington was asked to file a brief on behalf of the state to aid the court in its determination of the question presented, and a brief was submitted by that office as amicus curiae. After hearing argument we filed an opinion (*Ashley v. Superior Court,* 82 Wn.2d 188, 509 P.2d 751 (1973)).

A petition for rehearing has been granted. We adhere to the views expressed in the earlier opinion to the extent they are repeated herein.

■ We should state at the outset that in its original opinion filed in this case, the court addressed itself to an issue squarely presented only in the facts of the Marx case, although no appeal had been taken by the Prosecutor for Pierce County from the Court of Appeals' judgment. The question whether the court could waive the sheriff's fees within the state of Washington was not before the court. The appellant's brief in the case before us assumed that the matter was at issue and argued the propriety of the Court of Appeals' ruling. The prosecutor's brief, as well as that of amicus, also exhibited that same assumption. Upon reexamination of the record, the court rules that this issue has not properly been brought before the court and should not now be addressed.

Furthermore, since the prosecutor took no appeal from

that portion of the judgment of the Court of Appeals which granted the petitioner the writ of mandate requiring the Superior Court to waive the filing fees in this action and makes no assignment of error directed to that ruling of the Court of Appeals, the only question before this court is whether the Court of Appeals properly held that the Superior Court could not order payment of the costs of publication or of sheriff's service in Oregon. ·

Upon reconsideration of the issue which is properly before the court, the court has concluded that it should not at this time decide the question whether a court may order payment out of funds within its control or may order a state officer to pay expenses of an indigent litigant, where the legislature has not seen fit to appropriate money for that purpose. We reach this conclusion because we are convinced that the petitioner is in a position to provide the defendant husband with sufficient notice of the pending action to satisfy constitutional requirements without the necessity of incurring the expense of either publication or sheriff's service.

It is not disputed that the petitioner is indigent and that her cause of action has merit. Her allegation is that she and her husband have lived separate and apart for a period of more than 2 consecutive years, a ground for divorce under RCW 26.08.020 (9). The Supreme Court of the United States has said in *Boddie v. Connecticut, supra,* that a state may not, consistent with the obligations imposed upon it by the due process clause of the Fourteenth Amendment, preempt the right to dissolve the legal relationship of marriage without affording all citizens access to the means prescribed for doing so. It held that the plaintiffs in that case could pursue their divorce actions without the necessity of paying court fees, such fees being a restriction upon their access to the courts, the only effective means of resolving the dispute at hand.

In this case, of course, we are not concerned with the question whether a state can require indigents to pay filing

fees prescribed by the legislature and to be charged by the courts in connection with the bringing of an action, such fees having been ordered waived by the Court of Appeals, in conformity with our decision in *O'Connor v. Matzdorff, supra.* Waiver or payment of the costs of service of process is the problem before us. The United States Supreme Court was not directly confronted with this problem in *Boddie v. Connecticut, supra* at 382. However, it was cognizant of the problem and made the following statement concerning it:

[W]e think that reliable alternatives exist to service of process by a state-paid sheriff if the State is unwilling to assume the cost of official service. This is perforce true of service by publication which is the method of notice least calculated to bring to a potential defendant's attention the pendency of judicial proceedings. See *Mullane v. Central Hanover Tr. Co., supra* [339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950)]. We think in this case service at defendant's last known address by mail and posted notice is equally effective as publication in a newspaper.

CR 4(d)(3) incorporates RCW 4.28.100 and RCW 4.28.110. RCW 4.28.100 provides that when the defendant cannot be found within the state and upon the filing of an affidavit of the plaintiff, his agent or attorney, with the clerk of the court stating that he believes the defendant is not a resident of this state and cannot be found therein, and that he has deposited a copy of the summons, substantially in the form prescribed in RCW 4.28.110, and complaint in the post office directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the plaintiff, and stating the existence of one of the cases therein specified, which include actions for divorce, the service may be made by publication of the summons by the plaintiff or his attorney. RCW 4.28.110 provides that publication shall be made in a newspaper in the county in which the action is brought. RCW 4.28.180 provides that personal services of summons or process may be made upon the party outside the state.

RCW 4.28.070 provides that the summons shall be served

by the sheriff or by a person 18 years of age or over, who is competent to be a witness in the action, other than the plaintiff.

■ The United States Supreme Court has said in *Mullane v. Central Hanover Bank & Trust Co., supra,* at pages 314-15:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citing cases.] The notice must be of such nature as reasonably to convey the required information [citing case], and it must afford a reasonable time for those interested to make their appearance [citing cases]. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." *American Land Co. v. Zeiss,* 219 U. S. 47, 67 [55 L. Ed. 82, 31 S. Ct. 200 (1911)] . . .

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . [citing cases], or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

The court said further:

It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resi-

dent an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

Until notice, actual or constructive, is given to a defendant, the court has no jurisdiction in any case to proceed to judgment. *Ware v. Phillips*, 77 Wn.2d 879, 468 P.2d 444 (1970), and authorities cited therein. It is also the general rule that, in order to acquire jurisdiction by constructive service, the statute permitting such service must be strictly followed. *Yarbrough v. Pugh*, 63 Wash. 140, 114 P. 918 (1911). Also, where a special statute provides a method of process, compliance therewith is jurisdictional. *Sowers v. Lewis*, 49 Wn.2d 891, 307 P.2d 1064 (1957).

We are not here concerned with a special statute providing a method of process, but with the general statute which has been incorporated in Civil Rule for Superior Court 4.

RCW 2.04.190 provides that the Supreme Court shall have the power to prescribe from time to time the mode and manner of giving notice and serving writs and process of all kinds. It further provides that the Supreme Court will have the power to regulate and prescribe by rule the forms for and the kinds and character of the entire pleading, practice and procedure to be used in all suits, actions and appeals and proceedings of whatever nature by the Supreme Court, superior courts and justices of the peace of the state.

The constitutionality of this act was upheld. *State ex rel. Foster-Wyman Lumber Co. v. Superior Court*, 148 Wash. 1, 267 P. 770 (1928), and *State v. Pavelich*, 153 Wash. 379, 279 P. 1102 (1929). Pursuant to this statute our Civil Rule for Superior Court 4 was promulgated.

■ The court has inherent power to waive its rules. *O'Connor v. Matzdorff, supra.* The power to waive the requirements of a rule necessarily includes the power to impose conditions upon the waiver. Of course, this power does

not extend to the waiving of a defendant's constitutional right to notice, but we think it is within the power and the discretion of this court and of the Superior Court to waive the particular provisions of a rule providing the method by which notice is to be given upon the condition that another method, more reasonably calculated to effectively give notice, is utilized.

The exercise of such power is in harmony with RCW 2.28.150, which provides:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.

We have before us a case in which a plaintiff who has the right to bring her action for divorce in the Superior Court of this state will be effectively denied the exercise of that right if our rules providing methods of process are strictly imposed, since both publication of summons and complaint and service by the sheriff of the foreign jurisdiction involve expenses which the plaintiff cannot afford to pay. To date the legislature has not recognized the need of indigent persons for state financial assistance in pursuing their rights in civil cases, although it has made provision for indigent defendants in criminal cases (RCW 10.01.110 and 10.01.112).

The court is therefore faced with this dilemma. If the right of the plaintiff is to be protected, it must either order the payment of public funds when no appropriation has been made to cover the cost of publication and/or sheriff's service, or it must fashion a different method of service which will involve only a minor cost to the plaintiff. We think the latter course is the most appropriate under the circumstances.

According to the uncontradicted allegations of the plaintiff, the defendant no longer resides in the state of

Washington, consequently to publish notice of the impending action in Pierce County as prescribed by the rule (incorporating the statute) would be of doubtful efficacy in conveying actual notice to the defendant. Since, according to the plaintiff's allegations, the defendant spends most of his time traveling and his itinerary is unknown to her, the prospect that the sheriff could successfully serve the defendant personally in Oregon is also remote. We think that a method of service by mail would be equally effective under the circumstances.

The petitioner states that her best information is that her husband occasionally stays with his parents at Scappoose, Oregon. It would appear, therefore, in the absence of any other information concerning his whereabouts, that the best chance of giving him notice of the pending proceedings is to address a copy of the summons and complaint to him at his parents' address, by registered or certified mail, return receipt requested, and also to address a copy to his parents, return receipt requested, and to enclose a letter to them asking them to deliver the summons and complaint to their son at the earliest opportunity, and to advise the petitioner when this has been done or to advise where he may be reached. To encourage a response a return addressed and stamped envelope should be enclosed.

We think that it can safely be assumed that notice sent in this manner will eventually reach the defendant husband. The method comports with the test set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). It is one which a person desirous of actually informing the absentee might reasonably adopt to accomplish this purpose.

Of course when this method is employed the court cannot be certain of the date upon which notice was actually given, unless the defendant signs the return receipt or the parents respond to the request for advice as to the date of delivery. It is important that the defendant should have the full 60 days from the date of receipt of the summons, pre-

scribed by CR 4(e)(2) and RCW 4.28.180, within which to respond to the complaint if he wishes to do so. On the other hand, the petitioner, if her allegations are true, has a right to her divorce and should not be required to wait an unreasonably long time to obtain her decree. If the defendant is determined to ignore the summons and persuades his parents not to respond to the request for advice, we think it can be safely assumed that he is willing to forfeit his right to contest the divorce.

Recognizing the natural bonds of affection and concern which ordinarily exist between parents and children, it can be reasonably assumed that, in the absence of any showing to the contrary, the defendant's parents are in communication with their son and are concerned with his welfare sufficiently to advise him that they have received notice of pending divorce proceedings instituted by his wife. It also can be assumed that if they are unable to contact him or know of another address where he can be reached, they will so advise the petitioner in order to protect their son's interest.

If the defendant himself does not sign a receipt of the summons and complaint, a reasonable time must be allowed for the delivery of summons and complaint to him. If his parents do not respond to the request for advice as to the date of service, a time must be set within which it can be reasonably assumed that actual notice was given but that both parents and son elected not to acknowledge the same. We think that 30 days is a reasonable time to allow for this eventuality. This added to the 60 days in which to answer is a longer period of time than is granted the defendant under CR 4(d)(3) (RCW 4.28.110), where constructive service is made by publication; and the probability that actual notice will be given is greater than it would be if publication were the method employed.

Therefore, if the petitioner decides to utilize the procedure for service which we provide herein, the 60-day period provided in RCW 4.28.180 shall begin to run from the

date the return receipt is signed by the defendant, if he signs it; or from the date the parents deliver a copy of the summons and complaint to the defendant, as reported by them in response to the petitioner's request; or from a date 30 days after the two copies of the summons and complaint are deposited in the mail, if actual service upon the defendant cannot be proved.

The petitioner, in her letter to the parents of the defendant, should also advise them that the court has decreed that if no response is received from either the defendant or his parents within 90 days after the date of mailing, it will be assumed that he consents to the divorce and the petitioner will be allowed to take her decree.

When the petitioner can show to the Superior Court that these steps have been taken and that the defendant has received actual notice or that he has failed to respond within 90 days after mailing of the summonses and complaints to him and to his parents, the court should grant the decree.

This case is of course simplified by the fact that there is no property to be distributed. That is presumably the case ordinarily where indigency is claimed. There are minor children of the parties, and the duty to support the children exists regardless of the marital status. His alleged conduct in abandoning his family manifests an indifference to his marital rights which justifies the court in concluding that his consent to a divorce decree can be assumed if he fails to respond to notice delivered to a place where he can normally be expected to receive it and into the hands of persons who can reasonably be expected to deliver it to him or advise him of its receipt.

We realize that the procedure which we have fashioned in this case cannot be expected to satisfy the demands of due process in every case and that the problem of costs of process where indigent plaintiffs are concerned is not confined to persons situated exactly as the plaintiff in this case. The problem is of course greatly complicated by the fact

that the legislature has not taken any action to provide funds for costs of civil litigation for the poor. We assume that it will be asked to consider this matter in the near future.

In the meantime the court will be open to suggestions for changes in its rules regarding process service, with a view to making the methods authorized not only less expensive but also more effective in conveying actual notice to the defendant. The court would be interested in receiving opinions and any data that is available on the efficacy of the present methods in this regard, and the practicality and probable utility of other available methods. If, after study, a change is indicated, a new rule will be promulgated.

The cause is remanded to the Superior Court with directions to waive the filing fee, in accordance with the order of the Court of Appeals; and, if no appearance is made by the defendant, to grant the divorce if and at such time as the petitioner is able to show to the court's satisfaction that she has served notice upon him in accordance with the procedure set forth herein and that the prescribed time has elapsed.

FINLEY, HUNTER, and HAMILTON, JJ., concur.

BRACHTENBACH, J. (concurring in the result)—I concur in the result, but must disagree with the implication of the majority that the trial court will have jurisdiction to enter a valid support order against the husband.

The husband is a nonresident. The service of process fashioned herein is constructive service only. Those two facts lead to the inescapable conclusion that the court has no jurisdiction to enter an in personam support decree. This is hornbook law, but the majority, in speculative dictum, suggests otherwise.

> No valid personal judgment may be rendered against a nonresident defendant on the basis only of substituted or constructive service of process.

62 Am. Jur. 2d *Process* § 77, at 858 (1972).

Likewise, in speaking of support obligations, it is the law that

> While a court may gain jurisdiction to grant a divorce on constructive service, it cannot gain jurisdiction upon such a service which will support a judgment binding the party served personally, at least not if he is a nonresident.

24 Am. Jur. 2d *Divorce and Separation* § 828, at 939 (1966).

The petitioner has her remedy under RCW 26.21, the uniform reciprocal enforcement of support act, under the provisions of which she need not pay a filing fee or other costs.

HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur with BRACHTENBACH, J.

HALE, C.J. (concurring in part; dissenting in part)—The court decided this case correctly, I think, when in its unanimous opinion it held that, in cases of genuine indigency, the principles of *Boddie v. Connecticut*, 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971), should be applied in divorce actions. We accepted the rationale of the *Boddie* decision that, because the state has exclusive control over the legal ramifications of marriage and divorce and there exists no means of obtaining a divorce except through judicial decree, the requirement of that fee of an indigent party meant a denial of due process of law because the divorce could not otherwise be obtained. Relying upon the authoritative cases cited in the dissenting opinion in *Iverson v. Marine Bancorporation*, 83 Wn.2d 163, 169, 172, 173, 174, 517 P.2d 197 (1973), I would adhere to this narrow ruling even though the funding of the judicial system depends to a substantial degree upon the filing fees. *See* RCW 36.18.025 and RCW 2.32.075 appropriating a part of the filing fees for judicial salaries and costs of stenographers and court reporters. We should, therefore, stay with the court's earlier unanimous opinion delivered in this very case. *Ashley v. Superior Court*, 82 Wn.2d 188, 509 P.2d 751 (1973).

The present opinion, made upon a rehearing, when con-

sidered in pari materia with *Iverson v. Marine Bancorporation, supra,* I think launches this state upon a policy of providing complete legal services at public expense for all indigent persons in purely private civil litigation, without any authority whatever from the legislature and in direct violation of the constitutions. In *Iverson,* this court held that an indigent plaintiff who brought a private civil action, the avails of which upon recovery would inure solely to her, was entitled as a matter of law to a statement of facts to be prepared and supplied her entirely at public expense. No other jurisdiction in the country can be shown to place such a sweeping burden on the public treasury. Now the court seems to add to that burden by ruling that indigent plaintiffs in divorce actions are entitled as a matter of law not only to a waiver of the filing or appearance fee—with which I agree—but to service of process upon the defendant, whether personally or by publication—and in neither situation can the court point to any statute, resolution or legislative appropriation authorizing directly or indirectly such award.

And the court does not assert either here, except for a waiver of the filing fee, or in the *Iverson* case, that the constitutions require the state to provide money to indigent persons for their purely private civil litigation. Instead, the opinions appear to amount to a declaration of social policy with a judicial recommendation that it be implemented by the legislature. It is not the function of the courts, I think, and amounts to a breach of the separation of powers for the courts to recommend legislation by means of judgment or decree. In recommending payment, the court, I think contravenes the explicit provision of the state constitution, Const. art. 8, § 4 (amendment 11) that:

> No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law . . .

a provision buttressed by Const. art. 11, § 14 which makes it a felony for any county, city, town or other political subdi-

vision to expend any public money not authorized by law.

It is one thing to waive the filing fee under the *Boddie v. Connecticut* doctrine, based as it is on the state's exclusive mechanism to make provision for divorce or dissolution of marriage, and quite another to order the expenditure of public moneys not appropriated for the service of process where the state does not control exclusively the means of effecting service and where there are a number of reasonable alternatives for the service of process available to the plaintiff. For these and reasons subsequently shown, I would adhere to this court's original opinion in this case, *Ashley v. Superior Court,* 82 Wn.2d 188, 509 P.2d 751 (1973), as follows and largely as first delivered:

Appellants, claiming indigency, each brought an action for divorce in the Superior Court for Pierce County. They moved for waiver of the filing fee and requested an order that the costs of service of summons and complaint be advanced from the public treasury. From a denial of their respective motions, they applied to the Court of Appeals for a writ of mandamus and, from a partial relief allowed by that court, have filed here what is denominated as an application for a writ of certiorari, but which is here treated as a consolidated appeal on an agreed record from the Court of Appeals.

The parties are in substantial agreement concerning the operative facts in each of these cases. Lois Ashley, in her action for divorce in the Superior Court in Pierce County, sought an order both waiving the filing fee and directing that process be served upon her husband at public expense, that is, charged upon the public treasury on the court's budget. When the court declined to grant this relief, appellant applied to the Court of Appeals for a writ of mandamus allowing her to proceed in forma pauperis with a judicial waiver of the appearance or filing fee and for an affirmative order that the Superior Court or other appropriate agency of the county assume the costs of service of process. In support of that application, plaintiff showed that

court, as she represents here, that she is dependent upon public assistance for the support of her family.

Mrs. Ashley's affidavit says that she has minimal household goods and furniture and receives $291 per month from the state's Department of Social and Health Services under its program of aid to families with dependent children. Her husband, she says, abandoned the family 3 years earlier, and refuses to support it. During his absence he has sent to her only $200. He is a musician in a rock-and-roll band, she says, and is usually traveling but occasionally stays with his parents in Scappoose, Oregon. She has two children by a prior marriage, ages 14 and 15, and two by the present marriage to Mr. Ashley, ages 9 and 12, all of whom are dependent upon her for support. She asks this court not only to direct the Superior Court to waive plaintiff's appearance or filing fee but additionally to pay from the county treasury the taxable costs of finding the defendant husband and completing service of process, whether by publication or personally, upon him. She asks the court to require her husband, Travis J. Ashley, to pay $75 per month each for the support of his two children until they attain 21 years of age or become self-supporting, and she would grant him reasonable visitation rights.

In the other action, Vicky Lynn Marx seeks a divorce from Glennis D. Marx. She alleges that they married in 1970 and have one child, and that her husband is unemployed but should be required to pay $75 per month for the support of his child. Plaintiff, too, is unemployed and receives from the Washington State Department of Social and Health Services $199.65 per month for herself and child. She alleges cruelty and personal indignities rendering life burdensome as grounds for divorce and seeks custody of the minor child, but she would grant her husband reasonable visitation rights.

The parties plaintiff here also assert, as grounds for their divorces, separation from their respective husbands for more than 2 years. Neither plaintiff nor any state agency has made any effort evident in this record to require the

absent husbands to advance suit money or costs. Both plaintiffs, Lois Ashley and Vicky Lynn Marx, were represented in the Superior Court, in the Court of Appeals, and in this court without charge by counsel provided by the Pierce County Legal Assistance Foundation, a federally financed agency. That agency, however, has made it clear that, although it has public funds available for supplying legal counsel and other assistance to indigents in civil cases, it finds it inadvisable to expend federal funds for court costs such as appearance fees, official publication, and costs and fees for service of process on behalf of indigent litigants in such civil cases.

Divorce, like marriage, is largely a private matter to be resolved between husband and wife, and the constitution places no affirmative duty on the state to foster, encourage or finance either marriage or divorce. The state's policies against outside pressures for divorce are partly declared in a statute prohibiting any advertising "offering to procure or obtain, or to directly or indirectly aid in procuring or obtaining any divorce." RCW 9.04.020. But, the state does retain an exclusive power over the dissolution of marriage which it does not exert in most other contractual relationships. It allows dissolution of marriage only in the courts and for reasons explicity prescribed in law. Accordingly, it is recognized that, although a divorce action is a private matter, the state has an interest in it far beyond the concern it takes in most private litigation.

On the question of whether principles of due process require a waiver of appearance or filing fees in divorce cases for reasons of indigency, plaintiffs here rely principally on the rule in *Boddie v. Connecticut*, 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971). The ratio decidendi of *Boddie*, as set forth by Mr. Justice Harlan in the majority opinion, was based upon the premise that, because the state controls the legal ramifications of marriage and divorce and provides the exclusive mechanism for dissolving a marriage, indigent persons cannot constitutionally be denied access to the divorce courts for want of an appearance or

filing fee. The state, it is reasoned, having exclusive dominion over the legal institution of marriage and its dissolution, cannot bar the use of the state's exclusive mechanism established for dissolution of marriage solely for reasons of poverty. The opinion on this point says:

> Thus we hold *only* that a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so.

(Italics mine.) *Boddie v. Connecticut, supra* at 383.

It should be recognized that among civil actions a divorce is unique for it affords a remedy available only in a court of competent jurisdiction. If one cannot go to court he cannot lawfully terminate the marriage contract.

Courts have been created and are maintained by the people for the public benefit and under our constitution perform an indispensable service to a democratic society. Thus, it is sound public policy that they are maintained largely at public expense through funds derived from general taxation. But their existence allows peculiar benefits to those who actually use the courts in particular cases. For this reason, the state has a legitimate interest in requiring payment of filing or appearance fees generally from those who utilize the courts. The legislature has deemed the payment of filing fees to be a significant source of income for the support of the judicial system, and specifically provided that parts of the fees be allocated for the maintenance of county law libraries (RCW 27.24.070) and judicial salaries. RCW 36.18.025.

In order for the court to waive the filing or appearance fee in a divorce action, however, the showing of poverty must be actual and not theoretical, for any other rule would operate to deprive persons who are not quite indigent, or even those to whom the costs of litigation might prove disastrous, of the equal protection of the laws. Thus, to support the waiver of fees in forma pauperis, the applicant must make a clear showing to the court that, but for

such waiver, the plaintiff would be unable to maintain the action for divorce, and that there are no alternative means available for procuring the fee. The plaintiff must show to the court's satisfaction that the indigency is genuine, the need for the divorce is real, the grounds are meritorious and neither frivolous nor transient, and the divorce action is brought without the connivance, concurrence or collusion of the defendant. Finally, it should be made to appear that the filing fees cannot be obtained from other sources nor taxed in advance upon the defendant spouse.

We should, therefore, remand to the Superior Court. If the court in the exercise of its discretion determines that plaintiffs are genuinely indigent; that their needs for divorce are real—*i.e.,* founded in actual circumstances—and not theoretical; that the filing fees and costs cannot with reasonable diligence be obtained from the defendant spouses; and that these actions and the petitions of indigency are not collusively brought nor frivolously maintained, and are without the connivance of the defendant spouses, the court should direct that payment of filing or appearance fees as a condition to proceeding with the actions should be waived.

As to the application for payment out of the public treasury of the costs of service of the summons and complaint, either personally or by publication, I think the situation is markedly different. It is one thing to waive the filing or appearance fees required by the courts already in existence and functioning largely at the expense of the general public and quite another to affirmatively order the expenditure of public money out of the public treasury for private purposes without any appropriation whatever from the legislative branch of government. We need not decide definitively here whether the budget for the operation of the Superior Court is a state fund or a county fund, or an admixture of both, to conclude that no money may be paid out of it to the order of private persons except in pursuance of an appropriation by law. The state constitution is explicit on this point:

> No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law . . .

Const. art. 8, § 4 (amendment 11). And the use of the money of any county, city, town or other political subdivision for any purpose not authorized by law is not only prohibited but is declared to be a felony. Const. art. 11, § 14. The state constitution thus forbids the employment of public funds except upon appropriation by the legislative authority. No such appropriation has been made by the legislature or its subordinate legislative bodies in this state for fees of the sort asked here. The only appropriation shown in this record made for the purpose of providing court costs and expenses for indigent persons in private litigation is the one provided by Congress to fund the Economic Opportunity Act of 1964 (42 U.S.C. § 2809(a)(3)), which provided counsel for plaintiffs here without costs or charge.

The constitutional limitation declared in Const. art. 8, § 4, I think, applies to the county treasury as well, and no moneys may be expended therefrom except upon appropriation by the county legislative authority. No appropriation has been made either by the state or the county for the payment of costs of travel for the service of process in private civil litigation at the behest of private parties; nor for the payment of printing and circulation costs where, in private litigation, service is to be by publication. Accordingly, I would conclude that the plaintiffs' application for the payment of costs of service from the county or state treasury, as the case may be, should be denied even though the action be one for divorce.

Plaintiffs are not, however, without alternative means of serving process. Plaintiffs may have any person over the age of 18 years, competent to be a witness, and not a party to the action, make personal service either within or without the state. In many cases this can and will be done without any costs or charge whatever. And if plaintiffs are qualified for public assistance, including aid to dependent

children, and the needs for divorce are genuine and based on meritorious grounds, I see no reason why the fees essential to docketing and serving the necessary papers in a divorce action, if properly budgeted, could not be paid by the state's Department of Social and Health Services or other appropriate department of state government in the same manner and upon the same bases that the state provides these plaintiffs and their children with food, clothing, shelter, medical care and other true necessaries of life. In funding the necessary court costs out of the public assistance appropriation, the state would be doing no more in particular cases than discharging a responsibility which it has assumed in the care of indigent persons generally. But in doing so, it would afford reasonable screening of divorces in forma pauperis so as to curtail the very abuses quite likely to arise in widespread free litigation in private civil actions.

Plaintiffs' counsel have furnished this court with an explanation of why the federal government, in providing counsel without cost to these plaintiffs and thus assuming by far the greater costs of these actions, has declined to provide the additional but comparatively minor costs of service of process or the filing fees for that matter. A memorandum issued in December 1970, by Erwin N. Griswold, Solicitor General of the United States, stated that the legal services rendered these plaintiffs come within the Economic Opportunity Act of 1964, as amended 42 U.S.C. § 2701, et seq.; that the office of legal services has been established and financed by the Congress to provide legal counseling, representation and other lawyer services to people of this country living in poverty. For fiscal 1970, the Congress appropriated some $58 million for the operation of 267 neighborhood legal services programs, and of the thousands of matters considered by these offices and brought to litigation more than 60,000, or over 50 percent, involved domestic relations problems. The solicitor general's memorandum, however, implies that there is no legal bar to use of these federal funds for filing fees in state courts on behalf of

indigent clients, but rather that the practice is merely discouraged because of administrative policies against it. "Local programs do have some leeway in deciding how to spend the federal funds they receive," says the memorandum, and adds:

Thus, it is entirely possible that a particular program would use a portion of its funds to pay some filing fees, for example in cases where the substantive question sought to be raised by the lawsuit was deemed of particular importance to the program. Local programs would not, however, be funded to pay such fees as a matter of course, because the Office of Economic Opportunity does not consider such uses of its limited funds to be sufficiently productive.

And the solicitor general says, too, that "A typical program grant will usually have a small budget allocation for 'Court Costs,'" but any allocation over 1 percent would be excessive "unless justified by experience and by a need supported by evidence."

Appellants' counsel estimate that if indigent persons may file and have their process served without cost, in addition to the 2,300 divorce actions brought in Pierce County alone in 1971, another 800 would have been filed in forma pauperis. These figures present the curious anomaly of a federally financed agency deriving its funds from the comparatively vast sources of the federal treasury and operating on a budget of nearly $60 million but which declines to assume the modest additional costs of filing and service of process in these actions. The federal agency thus places an enormous increase in the costs of maintaining a state judicial system, without assuming that small part of such added expense as is represented by filing fees and fees for service of process. Of the two treasuries best able to afford the costs of filing fees and services of process in divorce actions, that of the federal government with its virtually unlimited power of taxation would seem most appropriate and equitable. It would appear if an agency of the United States Government has $58 million with which to supply

legal counsel in civil matters to indigent persons, and that its activities will add some 800 civil cases each year to the docket load of Pierce County alone, the federal government should as a matter of policy assume the rather modest costs of filing these additional cases. The payment of filing fees and service of process fees should, I think, come within that leeway which the solicitor general mentioned "in deciding how to spend the federal funds they receive."

In summary, then, I think that due to the state's supervening interest in divorce matters with ultimate control over dissolution of marriage lodged in the courts of this state, the capabilities to pursue this remedy ought not, under the constitutions, be denied on account of poverty. And, since a divorce may not be obtained except by the decree of a superior court, the appellant's application for waiver of filing fees in a divorce action where the plaintiff by reason of poverty cannot obtain the funds with which to file the divorce action and is without means otherwise to bring the action should be granted. But with respect to the costs of service of process, whether by publication or personal service by delivery of the summons and complaint, in the absence of statute affording equal protection, the rule ought to be and is different.

Finally, I think that there exists a ready alternative to service by publication in divorce cases brought in forma pauperis which lies within the trial court's discretion—*i.e.*, service by mail. Service of process generally is covered by statute. RCW 4.28.080-.185. The courts are permitted by statute to adopt rules from time to time including, I think, those which are applicable to the method and means of effecting service of process. RCW 2.04.190-.200 (Laws of 1925, Ex. Sess., ch. 118, §§ 1, 2); *State ex rel. Foster-Wyman Lumber Co. v. Superior Court*, 148 Wash. 1, 267 P. 770 (1928). *State v. Pavelich*, 153 Wash. 379, 279 P. 1102 (1929). This court has already decided that in a proper case, and in circumstances of true indigency, the court may waive the filing fee. *O'Connor v. Matzdorff*, 76 Wn.2d 589,

458 P.2d 154 (1969). Although the appellants here do not have a constitutional right to moneys from the Superior Court or other funds of the county treasury for the payment of printing and publication costs without a lawful appropriation, a substituted method of service may, in the court's discretion, be authorized by the trial court. The Supreme Court cited *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), in *Boddie v. Connecticut*, 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971), at 382:

> [S]ervice by publication . . . is the method of notice least calculated to bring to a potential defendant's attention the pendency of judicial proceedings. See *Mullane v. Central Hanover Tr. Co., supra.* We think in this case service at defendant's last known address by mail and posted notice is equally effective as publication in a newspaper.

The legislature already, in cases involving child support, has paved the way for service by registered or certified mail by allowing the secretary of the Department of Social and Health Services of the state to serve notice of delinquent child support upon the debtor "at his last known address by certified mail, return receipt requested" (RCW 74.20A.040); and such notice by mail, when refused, may be the basis for an enforceable lien on the debtor's real or personal property or in a garnishment of his wages. RCW 74.20A.060-.090. We have earlier said, too, that this court has been granted power by the legislature in RCW 2.04.190

> to prescribe, from time to time, the forms of writs and all other process, the mode and manner of framing and filing proceedings and pleadings; *of giving notice and serving writs and process of all kinds*; . . . and generally to regulate and prescribe by rule the forms for and the kind and character of the entire pleading, practice and procedure to be used in all suits, actions, appeals and proceedings of whatever nature by the supreme court, superior courts and justices of the peace of the state.

(Italics mine.)

Applying the common-law methodology of implementing

this power to prescribe methods of giving notice and serving writs and process in divorce actions maintained in forma pauperis, I would say that the trial court has the discretion to direct that service may be made by registered or certified mail with provision for a return receipt. If the trial court determines, as in *O'Connor v. Matzdorff, supra* at 603, that the divorce complaint is "brought in good faith and [with] probable merit," and that the plaintiff is truly indigent and not merely financially inconvenienced, and that the action is neither collusive nor frivolous nor so contrived as to enable the defendant spouse to escape the legitimate costs of suit, or if the court determines that the defendant spouse cannot be found, then the trial court, upon a proper showing, should be authorized to order that service of the summons and complaint may be completed by mail by requiring that copies of the documents to be served be deposited in the mails with postage prepaid thereon and addressed to the last several known addresses of the defendant and with proof of such service and return receipt thereof filed in the case. I would not now pass upon the efficacy of such service beyond provisions for the divorce, the custody of the children of the marriage, and provision for their support, maintenance, custody and visitation.

The writ, in my opinion, should issue accordingly and vest in the sound discretion of the Superior Court to allow the two causes to be filed in forma pauperis at public expense with the method of service of the summons and complaint to be decided by the Superior Court.